(87 App. Div. 346.)

PEOPLE ex rel. FINN v. GREENE, Police Com'r.

(Supreme Court, Appellate Division, First Department. November 13, 1903.)

1. CITY POLICE FORCE—RIGHT TO POSITION AS DETECTIVE SERGEANT.
Greater New York Charter, § 320 (Laws 1897, p. 115, c. 378), provided that there should be one headquarters or central station established by the police board in each borough. On February 9, 1900, the police board resolved that there should be established a squad to be known as the "headquarters squad." March 13, 1901, the police commissioner made an order creating a squad, to be designated as the "Brooklyn borough headquarters squad." Rev. Charter, § 290 (Laws 1901, p. 122, c. 466), becoming effective on January 1, 1902, provided that the commissioner should maintain a central office bureau of detectives, and that the officers theretofore assigned to "what is known as the headquarters squad," and who were acting thereon on April 1, 1901, should be known as detective sergeants, and should act in such bureau. Relator was assigned to the Brooklyn headquarters squad April 6, 1901. Held, that Rev. Charter, § 290, included the borough headquarters squads, and that relator was entitled to a position as a detective sergeant.

2. SAME—MANDAMUS—LIMITATIONS.
     The four-months limitation prescribed by New York Revised Charter,
§ 302 (Laws 1901, p. 129, c. 466), for proceedings for reinstatement on the
police force, does not apply to mandamus instituted to secure a position
as detective sergeant, to which a police officer claims to be entitled.

3. SAME—LACHES.
     A police officer was detached from a borough headquarters squad,
where he was on duty, on April 25, 1902. On May 8, 1903, he instituted
mandamus to secure a position as detective sergeant, to which he claim-
ed to be entitled under Greater New York Charter, § 290 (Laws 1897, p.
99, c. 378). On November 17, 1902, the special term decided that a rela-
tor in a certain mandamus proceeding was not entitled to restoration to
the office of detective sergeant, and January, 1903, the supreme court
held that Greater New York Charter, § 290, was unconstitutional. *Held*
that, while relator might be excused for not suing out his writ until the
question of constitutionality had been determined by the Court of Ap-
peals, yet his quiescence from April 25, 1902, until November, 1902, con-
stituted laches.

Appeal from Special Term, New York County.

Mandamus by the people, on the relation of Oscar J. Finn, against
Francis V. Greene, as police commissioner of the city of New York.
From an order granting a peremptory writ, respondent appeals. Re-
versed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON,
INGRAHAM, and LAUGHLIN, JJ.

Terence Farley, for appellant.

Bernard J. York, for respondent.

PATTERSON, J. The police commissioner of the city of New
York appeals from an order of the Special Term granting the rela-
tor's application for a peremptory writ of mandamus. The order
requires the appellant "forthwith to grade and recognize the relator,
Oscar J. Finn, as a detective sergeant of police in the police force
in the police department of the city of New York, and to forthwith
grant him, the said Oscar J. Finn, all the rights, privileges, and
emoluments belonging to said rank as a detective sergeant of police
in said police force of the police department of the city of New York,
with interest thereto pertaining as of January 1, 1902, together with
$50, his (the relator's) costs in this proceeding." It appears by the
record that prior to January, 1898, the relator was appointed a police-
man in the city of Brooklyn, and by force of a provision of the charter
of the Greater New York City, on January 1, 1898, he became a mem-
ber of the police force of the city of New York.

It also appears by the record that, at the time the charter of the
Greater City of New York went into effect, there was a headquarters
or central station in the borough of Manhattan, and a central office
bureau of detectives. By section 320 of the Greater New York Char-
ter (Laws 1897, p. 115, c. 378) it is provided that there shall be one
headquarters or central station established and located by said police
board in each borough into which the city of New York is divided
by this act. On February 9, 1900, a resolution was passed by the
board of police, as follows:

"Resolved, that there be and is established a squad to be known as head-
quarters squad, attached to the office of the chief, and that the chief be and is

authorized to assign for the performance of duty therein such officers as he may deem necessary and proper; and the chief clerk is required to prepare pay rolls to be known as headquarters squad pay rolls."

On the 13th of March, 1901, the police commissioner made the following order:

"Ordered, that there be and is created a squad to be designated 'Brooklyn borough headquarters squad.' There shall be attached to said squad all members of the uniformed force who are detailed to the performance of duty in the offices of the second deputy commissioner, deputy chief of police, inspectors, and other officers located in borough headquarters. A pay roll shall be made for said squad, which shall be certified by the second deputy commissioner to the police commissioner."

On the 1st of January, 1902, the Revised Charter of the City of New York went into effect. Section 290 of that charter (Laws 1901, p. 122, c. 466) provides that:

"The police commissioner shall maintain a bureau, which shall be called the central office bureau of detectives, and shall select and appoint to perform detective duty therein from the patrolmen or roundsmen as many detectives as the said commissioner may from time to time determine necessary to make that bureau efficient. The patrolmen or roundsmen so selected and appointed, and the patrolmen or roundsmen heretofore selected, appointed or assigned to perform detective duty in the detective bureau, or what is known as the headquarters squad, and who were acting in said bureau or squad on the first day of April, nineteen hundred and one, shall be known as detective sergeants, shall act as such in said bureau, and shall hold the same rank, and shall be eligible for promotion in the entire police force in the city under the same rules and conditions applicable to the promotion of all other sergeants of police in said city, and shall not be reduced in rank or salary except in the manner provided by law for sergeants and other officers of the police force."

On the 6th of April, 1901, the relator was assigned to the Brooklyn headquarters squad for the performance of detective duty in that squad, and was attached to it from April 6, 1901, to April 25, 1902. In April, 1903, the relator demanded from the present police commissioner, the appellant here, that he be recognized as a detective sergeant on the police force, and be accorded the rights and privileges pertaining to that grade. Upon the refusal of the police commissioner to comply with the demand of the relator, a mandamus was applied for, and resulted in the order from which this appeal is taken.

The section of the New York charter under which the present relator claims his right was considered by the Court of Appeals in the Matter of Sugden v. Partridge, 174 N. Y. 87, 66 N. E. 655. In the opinion of the court it is stated that it was inclined to the view that it was the intention that the provisions of the section should apply to those who continued in the positions occupied by them until the act took effect, and did not relate to those who were acting as detective sergeants on the 1st day of April, 1901, for that construction might extend the benefit of the act to those who were discharged from the service between that date and the date at which the new provision became a law or when it took effect. But the court also remarked that if the provision did not apply to those who continued in the position until the act took effect the fatal provision could be eliminated, leaving all the other provisions of the act in force as applying to those persons filling the office at the time the act went into effect. Under

that interpretation of the statute, the plaintiff is entitled to his writ (if not otherwise precluded from asserting his right) unless the headquarters squad referred to and mentioned in section 290 of the Revised Charter means the headquarters squad in the borough of Manhattan. The learned judge at Special Term considered that section 320 of the Greater New York City Charter provided that there should be one headquarters in each borough, and that there could be no distinction between the headquarters squad in the borough of Manhattan and the headquarters squad in the borough of Brooklyn.

We think that view is correct. Section 290 of the Revised Charter provides that the patrolmen or roundsmen theretofore selected or appointed or theretofore assigned to perform detective duty in the bureau, or what is known as the headquarters squad, shall be known as detective sergeants. Section 320, p. 115, of the Greater New York Charter of 1897, provided that there shall be one headquarters or central station established and located by the said police board in each borough in which the city of New York is divided by this act. Therefore the police commissioner had authority and was required to establish a headquarters or central station in the borough of Brooklyn. On the 14th of March, 1901, there was established a headquarters squad designated as the "Brooklyn borough headquarters squad," to which the relator was assigned. We think that the provision of section 290, under which the relator claims, refers to patrolmen or roundsmen selected, appointed, or assigned to perform detective duty in the headquarters squads as organized at the time he was assigned to the Brooklyn squad, and that he is fairly included within the purview of section 290 of the Revised Charter.

But it is urged that the delay of the relator in instituting the proceeding required that the writ should have been denied. The proceeding is not barred by the four-months statute of limitations prescribed in section 302, p. 129, of the Revised Charter, for the reason that the relator did not ask to be restored or reinstated to the police force, and the four-months limitation contained in section 302 relates only to such a proceeding.

This court has decided that; although there is no statute limiting the time within which an application for a peremptory writ of mandamus must be made, the four-months limitation applicable to a writ of certiorari will be applied, and that the application will be denied, if not made within the time, unless the delay is satisfactorily explained. People ex rel. McDonald v. Lantry, 48 App. Div. 131, 62 N. Y. Supp. 630. However, as said in the Matter of McDonald, 34 App. Div. 512, 54 N. Y. Supp. 525, there is no hard and fast rule laid down upon the subject, and, while an unexplained delay of over four months may in general be deemed laches in this class of cases, yet each case must depend upon its own special facts and circumstances. In the matter of Murphy v. Keller, 61 App. Div. 145, 70 N. Y. Supp. 405, the failure of the relator, who was removed from his position of superintendent of hospitals on January 3, 1898, to institute proceedings to compel his reinstatement until July 1, 1900, was held to constitute laches. He alleged that his failure to proceed earlier was because his right to reinstatement and the methods of procedure were doubtful and un-

settled, and that the institution of the proceeding was delayed until decisions were made by the Supreme Court, which settled the law on the subject of removals from office in the city of New York. In People ex rel. Croft v. Keating, 49 App. Div. 123, 63 N. Y. Supp. 71, the failure of a veteran to institute mandamus proceedings until nine months after removal was held to be fatal unless satisfactorily explained, and that the excuse offered by him was held to be insufficient, for it was simply that he had been informed that the law was unsettled, and that he understood that there were some applications pending and undetermined.

In the present case the relator was detached from the Brooklyn borough headquarters squad on the 25th of April, 1902. His petition for the writ was sworn to on the 8th day of May, 1903. The excuse he offers is that the question of the constitutionality of the statute had been in litigation. We know from the records of this court that in the Matter of People ex rel. Lahey v. Partridge (Sup.) 77 N. Y. Supp. 691, 79 N. Y. Supp. 724, it was decided by the Special Term on the 17th of November, 1902, that the relator in that case was not entitled to a writ of mandamus compelling his restoration to the office of detective sergeant. In January, 1903, this court held that section 290, p. 99, of the Greater New York Charter, was unconstitutional. With that decision of this court the relator might well be excused for not suing out the writ until the Court of Appeals had reversed our judgment; but it remains that from the 25th of April, 1902, until November, 1902, he was quiescent, and made no assertion of his right. The excuse he offers is in kind the same as that advanced in Murphy v. Keller and People ex rel. Croft v. Keating, supra, and those cases require that the writ here should have been denied because of the relator's laches.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion for the writ denied, with $10 costs. All concur; INGRAHAM, J., in result.